UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DNOW L.P. d/b/a<br>DISTRIBUTIONNOW<br><br>    Plaintiff<br><br>v.<br><br>ALAYNA STEINMAN, DAN FARRELL,<br>ELIZABETH STEPHENS,<br>NOEL CONNOLLY, and<br>JARED PAYNE<br><br>    Defendants | Civil Action No.<br>4:20-cv-03033<br><br>District Judge<br><br><br>Magistrate Judge<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff DNOW L.P. d/b/a DistributionNOW ("Plaintiff"), by and through its undersigned attorneys, alleges as follows for its Complaint and Application for Injunctive Relief against Defendants Alayna Steinman, Dan Farrell, Elizabeth Stephens, Noel Connolly, and Jared Payne (collectively "Defendants"):

**NATURE OF THE ACTION**

1.     This lawsuit involves the misappropriation and misuse of Plaintiff's confidential and proprietary information by Defendants.

1

2.  With very little notice, the five Defendants left Plaintiff's employ in early and mid-2020 to begin working in similar positions for Expedi, Inc. d/b/a GoExpedi ("GoExpedi"), a direct competitor to Plaintiff.[1]

3.  Following their separation, Plaintiff conducted a forensic investigation of the Defendants' computer activities on Plaintiffs' machines provided for their use and on Plaintiffs' intranet and cloud data storage service.

4.  The investigation revealed that just prior to leaving, Defendants accessed and transmitted extensive amounts of Plaintiff's confidential and proprietary information from Plaintiff's databases.

5.  Defendants have since attempted or are attempting to use this misappropriated information to contact Plaintiffs' customers and compete on bids and other business on behalf of GoExpedi, their new employer.

6.  Defendants also used confidential login information to download proprietary customer information from Salesforce and Sharepoint, databases used to track and monitor Plaintiffs' customer information. This customer information was beyond the scope of Defendants' job duties, so Defendants had no proper or justifiable purpose for accessing it.

7.  Plaintiff sent cease and desist letters to Defendant Steinman and Defendant Payne on March 2, 2020, and March 4, 2020, respectively, requesting the return of confidential client information and provide assurance that Defendants Steinman and Payne would comply with

---

[1] On its website, GoExpedi touts its "innovative supply chain model [that] is re-inventing industrial supply . . ." providing "customers . . . with an online procurement platform that allows for fast, error-free, rapid procurement of critical parts to keep operations running." [See Exhibit A, GoExpedi Website as of August 28, 2020]. DNOW similarly advertises on its website its ability to provides customers with "supply chain solutions that accelerate the growth of their businesses" that enhances operations with "streamlined supply chain management", "reduced procurement and logistics costs", and "guaranteed quality for all products and services". [See Exhibit B, DNOW website as of August 28, 2020].

Plaintiff's Code of Business Conduct and Ethical Standards, but received no response. The March 2nd and 4th letters are attached hereto as Exhibit C.

8. In addition, Plaintiff sent a letter to GoExpedi CEO Tim Neal on March 4, 2020, advising him that Plaintiff would enforce its rights and enclosing the letter to Defendants Steinman and Payne, but received no response. The March 4, 2020 letter and the enclosures are attached hereto as Exhibit D.

9. Since March 4, 2020, GoExpedi has continued to recruit Plaintiff's employees in pursuit, among other things, of Plaintiff's confidential customer information.

10. Defendants Stephens and Farrell resigned their sales positions with Plaintiff on June 30, 2020, and July 14, 2020, respectively, to assume similar positions at GoExpedi.

11. Defendant Connolly, who was a director of Plaintiffs' e-commerce initiative, was terminated by Plaintiff on July 22, 2020, after it was discovered that he submitted an employment application to GoExpedi's talent acquisition team.

12. Plaintiff sent cease and desist letters to Defendants Stephens, Farrell, and Connolly on August 4, 2020, and, once again, received no response. The August 4th letters are attached hereto as Exhibit E.

13. Consequently, to stop the outflow of confidential and proprietary information and protect itself from irreparable harm, Plaintiff has been forced to file this request for extraordinary relief in order to protect its interests.

## THE PARTIES AND RELEVANT PERSONS

14. Plaintiff is a Texas limited partnership with its principal place of business located in Houston, Texas.

15. Defendant Steinman is a resident of the State of Texas who is believed to reside at 2508 Ralph Street, Houston, Texas 77006.

3

16. Defendant Stephens is a resident of the State of Texas who resides at 16610 Fern Rock Falls Court, Spring, TX 77379.

17. Defendant Farrell is a resident of the State of Alabama who resides at 3764 Riverwood Circle S, Theodore, AL 36582.

18. Defendant Connolly is a resident of the State of Texas who resides at 2218 Bywater Drive, Houston, TX 77077.

19. Defendant Payne is a resident of the State of Texas who resides at 12607 Twin Flower Drive, Tomball, Texas 77377.

## JURISDICTION AND VENUE

20. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a claim arising under the laws of the United States, the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, et seq.

21. This Court has personal jurisdiction over Defendants because they are either citizens of Texas or purposefully directed their activities towards Texas. Venue is proper in the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this District and/or a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

22. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

**A.   GoExpedi is a Direct Competitor of Plaintiff.**

23. Plaintiff is a leading global supplier of energy and industrial products, solutions, and engineered equipment packages. With a network of hundreds of locations in more than 20 countries as well as an online suite of digital channels, Plaintiff offers thousands of stocked items,

4

allowing customers to efficiently procure critical parts and supplies that keep their operations up-and-running 24-hours a day, seven days a week. A central component of this strategy is the company's DigitalNOW e-commerce platform, which enables customers to access vital information and Plaintiff's online catalog of products and make orders online from computers, tablets, and mobile devices at any time.

24. GoExpedi also claims to offer an e-commerce platform targeted at the oil and gas drilling market that allows their customers to procure parts to keep their operations running. Plaintiff is a direct competitor of GoExpedi in all of GoExpedi's business operations.

## B. Plaintiffs' Sales Personnel are Provided Access to Invaluable Confidential and Proprietary Information.

25. Plaintiffs' sales team is expected to generate substantial sales business volume for the Plaintiff. To achieve this expectation, Plaintiff's sales personnel deploy a critical competitive advantage by using the unparalleled amount of confidential sales data owned by Plaintiff and developed by Plaintiff over 150 years it has been in business.

26. Plaintiff's most reliable method for obtaining new business is confidential customer information. Because a great deal of industry business involves the service, upgrade, or replacement of a wide variety energy construction equipment, Plaintiff's enormous matrix of data regarding all previous orders serves an incredible competitive advantage in identifying future prospective business opportunities.

27. Sales personnel also have access to an enormous amount of other confidential and proprietary data, including proposals and price mark ups, contact lists, operations summaries, and annual and monthly business plans.

**C.      Plaintiff's Employees are Required to Agree to Strict Terms of Confidentiality.**

28.     All Defendants acknowledged and agreed to comply with the Plaintiff's Code of Conduct, which is attached hereto as Exhibit F:

  a.   Defendant Steinman executed the Code on June 10, 2019.

  b.   Defendant Payne executed the Code on June 13, 2017.

  c.   Defendant Stephens executed the Code on February 26, 2020.

  d.   Defendant Farrell executed the Code on May 6, 2020.

  e.   Defendant Connolly executed the Code on June 1, 2020.

29.     The Code of Conduct provides that confidential information must never be shared with anyone inside or outside of Plaintiff's organization who does not have a business need to know the information.

30.     The Code further explains that Former Employees may never disclose the Company's confidential information without prior approval from the legal department. This obligation to protect confidential information continues even after employees leave employment with Plaintiff.

31.     Former Employees have similar obligations to protect and not disclose Plaintiff's confidential information that are set forth in Plaintiff's Internet, E-Mail, and Other Electronic Data Systems Policy ("Data Policy), attached hereto as Exhibit G and in Plaintiff's other policies, including Plaintiff's Employee Invention and Confidential Information Agreement ("Invention Agreement"), attached hereto as Exhibit H.

32.     The Invention Agreement provides as follows: "During and after my employment, except as authorized by the Company, I will not disclose or use, directly or indirectly, any information that I obtain during the course of my employment relating to inventions, products, product specifications, processes, procedures, machinery, apparatus, prices, discounts,

manufacturing costs, business affairs, future plans, ideas, technical data or otherwise which is of a secret or confidential nature (whether or not acquired or developed by me) and which belongs to the Company or to those with whom the Company has contracted regarding such information."

**D.     The Five Former Employees Left Their Jobs With Plaintiff Between Late February 2020 and July 2020 and Immediately Began Working for GoExpedi.**

33.     Defendant Steinman was employed by Plaintiff from September 11, 2006 to February 25, 2020, most recently in the position of Director—Strategic Sales.

34.     Defendant Payne was employed by Plaintiff from June 12, 2017 to March 3, 2020, most recently in the position of Director—Strategic Sales.

35.     Defendant Stephens was employed by Plaintiff from March 3, 2008 to June 30, 2020, most recently in the position of Director—Area Sales.

36.     Defendant Farrell was employed by Plaintiff from June 5, 2006 to July 14, 2020, most recently in the position of Director—Strategic Sales.

37.     Defendant Connolly was employed by Plaintiff from June 10, 2019 to July 22, 2020, most recently in the position of Director—Digital and Process Efficiency.

**E.     The Former Employees Misappropriated Plaintiff's Confidential Data.**

     **1.     Defendant Steinman.**

38.     Defendant Steinman's last day worked for Plaintiff was February 25, 2020. A forensic review of her laptop computer revealed that in the days leading up to her departure she downloaded multiple files from different sources including Salesforce, a password-protected database used by Plaintiff to track customer information.

39.     Shortly after her departure, several of Plaintiffs' existing customers reported receiving a mass email message from Defendant Steinman announcing her new position with

GoExpedi, which was confusing to them because those customers had not worked with her in the past.

40. Upon information and belief, Defendant Steinman obtained Plaintiff's confidential customer information from Salesforce and used it to attempt to divert business from Plaintiff to GoExpedi. Moreover, upon information and belief, Defendant Steinman continues to use Plaintiff's confidential information to gain unfair competitive advantage in the market.

**2. Defendant Payne.**

41. Defendant Payne's last day worked for Plaintiff was March 3, 2020. A forensic review of his laptop computer revealed that in the days leading up to his departure he downloaded files to an external "thumb drive," including a file title "DNOW Value Proposition Template – Puradyn.pdf." The forensic review also revealed that he downloaded and opened files from multiple sources containing confidential customer information, pricing information, and sales history, with substantial activity occurring the night before and the morning that he tendered his resignation.

42. Upon information and belief, Defendant Payne is using Plaintiff's customer information, pricing information, and sales history to divert Plaintiff's customer and compete unfairly in the market.

**3. Defendant Stephens.**

43. Defendant Stephens' last day worked for Plaintiff was June 30, 2020. A forensic review of her laptop computer revealed that in the final weeks of her employment she accessed digital cloud services, including a Google Drive and Plaintiff's OneDrive account, dozens of times.

44. Defendant Stephens accessed Plaintiff's OneDrive account – which contains confidential customer information, pricing information, marketing strategy documents, and other

confidential information – approximately fourteen (14) times in June, which is atypical based on her job duties and user history.

45. Defendant Stephens accessed a Google Drive approximately thirty-six (36) times in June presumably to upload the confidential information that she downloaded from Plaintiff's OneDrive account.

46. Defendant also accessed files containing confidential customer information on Plaintiff's intranet database, "Sharepoint," multiple time immediately preceding her last day worked for Plaintiff.

47. Upon information and belief, Defendant Stephens is using Plaintiff's customer information, pricing information, and sales history to divert Plaintiff's customer and compete unfairly in the market.

**4.  Defendant Farrell.**

48. Defendant Farrell's last day worked for Plaintiff was July 14, 2020. A review of Defendant Farrell's activity on Plaintiff's cloud data storage and "Sharepoint" database revealed that he repeatedly accessed files containing confidential customer information in the days preceding his departure.

49. In particular, Defendant Farrell accessed a file containing confidential information about one of Plaintiff's large clients less than 24 hours before sending his final departure email.

50. Upon information and belief, Defendant Payne is using Plaintiff's customer information, pricing information, and sales history to divert Plaintiff's customer and compete unfairly in the market.

**5.    Defendant Connolly.**

51.    Defendant Connolly's' last day worked for Plaintiff was July 22, 2020. A forensic review of his laptop computer revealed that in July of 2020 he accessed digital cloud services, including a Google Drive, Plaintiff's OneDrive account, and Plaintiff's "Sharepoint" database, multiple times and accessed dozens of files presumably to transfer Plaintiff's confidential files to another device.

52.    Defendant Connolly has also refused to return an iPad that belongs to Plaintiff despite repeated attempts to retrieve the iPad by Plaintiff, which upon information and belief, contains confidential and proprietary information.

53.    Upon information and belief, Defendant Payne is using Plaintiff's customer information, pricing information, and sales history to divert Plaintiff's customer and compete unfairly in the market.

## COUNT I

**Misappropriation of Trade Secrets (Texas Uniform Trade Secrets Act)**

54.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 53 of the Complaint, as if fully set forth herein.

55.    During the course of their relationship with Plaintiff, Defendants were exposed to substantial amounts of Plaintiff confidential information.

56.    For example, Defendants had access to Plaintiff's large databases of customer information and sales data.

57.    This information is not available to the general public and is closely guarded by Plaintiff. Plaintiff keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive energy business.

58. This information is considered a trade secret under the Texas Uniform Trade Secrets Act (the "Act") and Texas common law because Plaintiff derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(6).

59. Defendants have used, and are using, Plaintiff's trade secrets (in the form of confidential Plaintiff customer information) to illegally compete with Plaintiff.

60. Similarly, Defendants have misappropriated Plaintiff's trade secrets by refusing to return Plaintiff's property, including Plaintiff confidential information, and continuously using that information to improperly solicit Plaintiff's customers.

61. Plaintiff has incurred significant damages as a result of Defendants' conduct. Plaintiff has suffered the loss of customers and potential customers. Defendants' illegal solicitations and actions have also damaged Plaintiff's goodwill, reputation, and legitimate business interests.

62. Plaintiff is suffering economic damage to its goodwill and business reputation.

63. Plaintiff has no adequate remedy at law and, unless injunctive relief is granted, Plaintiff will continue to be irreparably harmed by Defendants' misappropriation in a manner that is not fully compensable by money damages.

64. Accordingly, Plaintiff requests that this Court enter a preliminary and permanent injunction enjoining Defendants from using Plaintiff confidential information, and from disclosing Plaintiff confidential information to anyone not authorized to receive the confidential information.

65. Plaintiff also requests an order requiring Defendants to return Plaintiff's trade secrets and physical property.

66. Plaintiff further requests an award of its compensatory damages as well as exemplary damages and attorneys' fees because Defendants' misappropriation of Plaintiff trade secrets is willful and malicious.

## COUNT II

### Misappropriation of Trade Secrets (Defend Trade Secrets Act)

67. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 66 of the Complaint, as if fully set forth herein.

68. During the course of their relationship with Plaintiff, Defendants were exposed to substantial amounts of Plaintiff's confidential information.

69. For example, Defendants had access to Plaintiff's large databases of customer information and sales data.

70. This information is not available to the general public and is closely guarded by Plaintiff. Plaintiff keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive energy business.

71. The information described above constitutes a protectable a trade secret under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 et seq., because Plaintiff derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839.

72. Defendants misappropriated Plaintiff's trade secrets when they took Plaintiff's customer information without Plaintiff's permission. Defendants also misappropriated Plaintiff

trade secrets when they improperly accessed, reviewed, and downloaded Plaintiff's customer information, for which they had no legitimate business reason to do so, in the days leading up to their separation from employment.

73. Pursuant to 18 U.S.C. § 1836(3), this Court may grant injunctive relief to prevent any actual or threatened misappropriation of trade secrets.

74. Defendants' illegal and wrongful accessing, reviewing and taking of Plaintiff confidential information without Plaintiff permission constitutes actual misuse of Plaintiff trade secrets. Injunctive relief is therefore appropriate.

75. Accordingly, Plaintiff requests that this Court enter a preliminary and permanent injunction enjoining Defendants from using any Plaintiff's confidential information, and from disclosing Plaintiff's confidential information to anyone not authorized to receive the confidential information.

76. Plaintiff also requests an order requiring Defendants to return Plaintiff's trade secrets and physical property, as provided by 18 U.S.C. §1836(3)(A)(ii).

77. Plaintiff further requests an award of compensatory damages under 18 U.S.C. §1836(3)(B), exemplary damages under 18 U.S.C. §1836(3)(C), and reasonable attorneys' fees under 18 U.S. C. § 1836(b)(3)(D), because Defendants' misappropriation of Plaintiff trade secrets is willful and malicious.

## COUNT III

### Common Law Misappropriation (Unfair Competition)

78. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 77 of the Complaint, as if fully set forth herein.

79. Plaintiff created its vast database of confidential customer information through extensive time, labor, skill, and money.

80. Defendants have used, and continue to use, Plaintiffs' confidential customer information in competition with Plaintiff, thereby gaining a special advantage in the market (i.e., a "free ride") because Defendants, and their new employer, are burdened with little or none of the expense incurred by the Plaintiff.

81. Plaintiff has suffered, and continues to suffer, commercial damage, including, but not limited to, lost revenue, business opportunity, and good will.

## JURY DEMAND

82. Plaintiff, in accordance with Federal Rule of Civil Procedure 38, hereby demands a trial by jury on all issues.

## APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

83. For the harm and loss suffered by DNOW, and for the harm and loss that will continue into the future but for the intervention of the Court, DNOW has no adequate remedy at law. Accordingly, DNOW is entitled to injunctive relief against all Defendants.

84. The elements for obtaining injunctive relief in the Fifth Circuit are well settled. The moving party must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunctive relief will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) the injunction will not disserve the public interest. *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.,* 878 F.2d 806, 809 (5th Cir. 1989); *Equibrand Corp. v. Reinsman Equestrian Prod., Inc.,* No. 307-CV-0536-P, 2007 WL 1461393, at *4 (N.D. Tex. May 17, 2007). The party applying for injunctive relief "is not required to prove that he will prevail at trial but must establish the right to preserve the status quo pending trial on the merits by proving all of the four elements." *Propath Servs., L.L.P. v. Ameripath, Inc*., No. CIV.A.3:04-CV-

1912-P, 2004 WL 2389214, at *2 n. 1 (N.D. Tex. Oct. 21, 2004) (quoting *Southwest Research v. Keraplast Techs., Ltd.,* 103 S.W.3d 478, 481 (Tex. App.—San Antonio 2003)).

85.     Where trade secrets and goodwill are involved, "the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable," and damages difficult to calculate. *American Express Financial Advisors, Inc., v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996) (citing *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Stidham*, 658 F.2d 1098, 1102 n.8 (5th Cir. 1981)). When a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed. *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.); *see also Rugen v. Interactive Business Systems*, 864 S.W.2d 548, 551 (Tex. App.— Dallas 1993, no writ) ("Injunctive relief is recognized as a proper remedy to protect confidential information and trade secrets.") (citing *Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, *cert. denied*, 358 U.S. 898, 79 S.Ct. 223 (1958)).

86.     Likewise, the loss of confidential business information by its dissemination by ex-employees or its use to solicit customers, and the resulting harm to the business's customer goodwill, are particularly acute injuries not susceptible to purely financial compensation. *See Oxford Global Resources, Inc. v. Michelle Weekley-Cessnun*, No. 3:04-CV-0330, 2005 U.S. Dist. LEXIS 1934, at *9-10 (N.D. Tex. February 8, 2005); *see also Molex, Inc. v. Nolen*, 759 F.2d 474, 476 (5th Cir. 1985) ("Texas courts have routinely permitted injunctions to issue barring employees from soliciting the customers of their former employers."); *Pipkin v. JVM Oper., L.C.,* 197 B. R. 47, 55-56 (E.D. Tex. 1996) (holding irreparable injury where economic rights are difficult to calculate, as where injury to party's operations, reputation, and goodwill); *Cho v. Itco,*

*Inc.,* 782 F. Supp. 1183, 1185 (E.D. Tex. 1991) (finding threat of losing customer goodwill may constitute irreparable harm).

87. Here, within a six-month window, Defendants left Plaintiff's employ for a direct competitor, and Plaintiff's forensic review of their digital activities has established an unmistakable pattern of misappropriation of Plaintiff's confidential customer information immediately preceding Defendants' departures from Plaintiff.

88. Defendants are harming Plaintiff's legitimate business interests by using Plaintiff's confidential information illegally diverting and soliciting Plaintiff's customers and potential customers away from Plaintiff.

89. Plaintiff's confidential information and goodwill are at risk because Defendants are unfairly competing with Plaintiff and using Plaintiff confidential information on behalf of a competitor.

90. Defendants' refusal to respond to the letters sent by Plaintiff to Defendants, described in Paragraph 7, 8, and 12 above, demonstrates that the harm to Plaintiff is ongoing and that Defendants intend to continue using Plaintiff's trade secrets until the Court intervenes.

91. Given the difficulty of placing a dollar value on the amount of damage Defendants have done to Plaintiff's business interests, Plaintiff has no adequate remedy at law and, unless injunctive relief is granted, Plaintiff will continue to be irreparably harmed by Defendants' misappropriation of its confidential information.

92. Injunctive relief is appropriate considering Plaintiff's significant interest in its confidential information and customer relationships. Moreover, such relief to return and not use or disclose Plaintiff confidential information will not pose an undue hardship on Defendant. Nor will it be a disservice to the public interest.

93.     Accordingly, Plaintiff has demonstrated a substantial likelihood of success on the merits and a substantial threat that failure to grant the injunctive relief will result in irreparable injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests preliminary and permanent injunctive relief to restrain acts prejudicial to Plaintiff, in addition to any remedy at law. For the foregoing reasons, Plaintiff respectfully requests that the Court enjoin Defendants, and anyone acting in concert with Defendants, as follows:

A.      From directly or indirectly using or disclosing Plaintiff's confidential, proprietary and trade secret information that Defendants obtained as a result of their employment with Plaintiff, including without limitation: the identity of customers and potential customers; contact information for persons working for customers; details of past sales; information concerning specific customer needs and information relating to how Plaintiff met those needs; customer credit and financial data; customer payment history; pricing and pricing methodology; company strategy; customer feedback; service requests from any customer; procurement procedures; information regarding preferred or disfavored vendors; details regarding equipment purchased and used, or rejected as a result of quality control efforts; information regarding specifications of components purchased by or for Plaintiff's customers; plans and strategies for expansion or acquisitions; budgets; research; financial and sales data, history, and forecasts; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; Plaintiff's electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating Plaintiff; bids or proposals submitted to any third party; application engineering knowledge; training methods and training processes; organizational

structure; salaries of personnel; and payment amounts or rates paid to consultants or other service providers;

B. From interfering with Plaintiff's contracts and business relationships, including but not limited to directly or indirectly soliciting, servicing or accepting competing business from any of Plaintiff's customers that Defendants made contact with or obtained confidential information about during their employment with Plaintiff, for a period of 36 months following the termination of Defendants' employment with Plaintiff;

C. From interfering with employment relationships between Plaintiff and its employees by directly or indirectly soliciting them to leave their employment with Plaintiff or to accept employment with a competitor of Plaintiff, for a period of 36 months following the termination of Defendants' employment with Plaintiff;

D. From altering, modifying, tampering, removing, deleting, or destroying documents in their possession, including electronic information or electronic data, relating in any way to Plaintiff's claims, except with the prior express approval of Plaintiff; and

E. To immediately return to Plaintiff any confidential, proprietary and/or trade secret information of Plaintiff or other property of Plaintiff that Defendants acquired as a result of their employment with Defendant, including all electronic copies of such information and all copies thereof.

F. Plaintiff requests that application for temporary injunction be set for hearing and that Defendants be notified of the date, time and place of the hearing and, upon such hearing, the Court issue a preliminary injunction against Defendants enjoining them as described above.

G. Upon final trial, Plaintiff seeks an injunction against Defendants permanently enjoining them as described above.

H. Plaintiff seeks other relief as follows:

a. For all actual damages;

b. For exemplary or punitive damages;

c. For all appropriate equitable relief;

d. For pre-judgment interest as provided by law;

e. For post-judgment interest as provided by law;

f. For attorneys' fees;

g. For costs of suit; and

h. For all other relief, in law and in equity, to which Plaintiff may be shown at trial to be entitled.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ Christopher E. Moore*
Christopher E. Moore (Attorney-in-Charge)
TX Bar No. 24052778, USDC SDTX No. 713063
William H. Payne, IV
USDC SD/TX No.: 3121811
Gauri D. Nautiyal
USDC SD/TX No.: 3150790
Texas SBN: 24117921
One Allen Center
500 Dallas St., Suite 3000
Houston, TX 77002
Telephone: (713) 655-0855
Facsimile: (713) 655-0020
Electronic mail:
christopher.moore@ogletreedeakins.com
bill.payne@ogletreedeakins.com
gauri.nautiyal@ogletreedeakins.com

**Attorneys for Plaintiff DNOW, L.P. d/b/a DistributionNOW**